KELLEY DRYE & WARREN LLP
Lee S. Brenner (STATE BAR NO. 180235)
Catherine D. Lee (STATE BAR NO. 258550)
10100 Santa Monica Boulevard, 23rd Floor
Los Angeles, California 90067
Telephone: (310) 712-6100
Facsimile: (310) 712-6199
lbrenner@kelleydrye.com
clee@kelleydrye.com

Attorneys for Defendants Cerner Corporation &
Cerner Healthcare Solutions, Inc.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### EASTERN DIVISION

| | |
|---|---|
| MARI-MINA PHARMACEUTICALS, INC. dba DEL'S PHARMACY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CERNER CORPORATION; CERNER ETREBY – GARDEN GROVE; CERNER HEALTHCARE SOLUTIONS, INC.; and DOES 1 -25, inclusive,<br><br>Defendants. | Case No.:<br><br>**DEFENDANTS CERNER CORPORATION & CERNER HEALTHCARE SOLUTIONS, INC.'S NOTICE OF REMOVAL** |

## **NOTICE OF REMOVAL**

Defendants Cerner Corporation and Cerner Healthcare Solutions, Inc. (collectively, "Defendants") respectfully file this Notice of Removal pursuant to 28 U.S.C. § 1441(a), removing the above-captioned action (this "Action") from the Superior Court of the County of San Bernardino (the "San Bernardino Superior Court") to the United States District Court for the Central District of California, on the following grounds:

## I.   **INTRODUCTION**

1.   This Action was commenced on May 13, 2014, by the filing of a complaint (the "Complaint") in *Mari-Mina Pharmaceuticals, Inc. dba Del's Pharmacy v. Cerner Corporation; Cerner Etreby—Garden Grove; Cerner Healthcare Solutions, Inc.*, Case No. CIVDS14006493, in the San Bernardino Superior Court.  Defendants agreed to waive serve on June 11, 2014.  True and correct copies of the Complaint, the summons, and all process, pleadings, and orders served on Defendants are attached to this Notice of Removal as "Exhibit A," as required by 28 U.S.C. § 1446(a).

2.   Plaintiff presented Defendants with a formal waiver of service on May 22, 2014.  Defendants' counsel signed and returned to Plaintiff's counsel on June 11, 2014.

3.   Promptly after filing this Notice of Removal, Defendants will give written notice of the removal to Plaintiff through its attorneys of record in the Action, as well as to the Clerk of the San Bernardino Superior Court, as required by 28 U.S.C. § 1446(d).

4.   All properly joined defendants join in or consent to the removal of this action.

5.     The defendant named as Cerner Etreby—Garden Grove is not required to join in or consent to removal because to the knowledge, information, and belief of

both the Defendants Cerner Corporation and Cerner Healthcare Solutions, Inc., Cerner Etreby–Garden Grove does not exist.

6.   The Action properly may be removed to the United States District Court for the Central District of California, Eastern Division pursuant to 28 U.S.C. § 1332(a). Separately, this Court also has original jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).

7.   No admission of fact, law, liability, or damages is intended by this Notice of Removal, and all defenses, affirmative defenses, objections and motions hereby are reserved.

## II.   <u>NOTICE OF REMOVAL IS TIMELY</u>

8.   In accordance with 28 U.S.C. § 1446(b), Defendants are filing this Notice of Removal within the 30-day removal period.  The "thirty-day period … does not begin to run … until the defendant has been properly served under state law, or has agreed to waive service of process."  *Borchers v. Standard Fire Ins. Co*., No. C-10-1706 MMC, 2010 WL 2608291, at *2 (N.D. Cal. June 25, 2010); *see also McGuinn v. City of Sacramento Police Dep't*, No. 2:13-cv-00740-JAM-EFB, 2013 WL 3804051, at *2-*3 (E.D. Cal. July 18, 2013) ("The Court therefore finds that Defendant was formally served on [date] when it explicitly waived its right to formal service").

9.   Here, Cerner Corporation and Cerner Healthcare Solutions, Inc. agreed to waive service on June 11, 2014.  Because this Notice of Removal was filed within 30 days thereafter, the filing of this Notice of Removal is timely.

## III.   <u>THIS COURT HAS DIVERSITY JURISDICTION</u>

10.   28 U.S.C. § 1441(a) provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the . . . defendants . . . ."  28 U.S.C. § 1441(a).

11.   28 U.S.C. § 1332 provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or

value of $75,000, exclusive of interest and costs, and is between citizens of different States."  28 U.S.C. § 1332(a)(1).

### A.   Complete Diversity Exists Between Plaintiff and Defendants

12.   Diversity jurisdiction warranting removal is determined, and must exist, at the time the complaint is filed and at the time removal is effected.  *Strotek Corp. v. Air. Transp. Assoc. of Am.,* 300 F.3d 1129, 1131 (9th Cir. 2002).

13.   At the time the Complaint was filed, Plaintiff was a California corporation with its principal place of business in California.  Compl. ¶ 3.  At the time of filing this Notice of Removal, Plaintiff remains a California corporation with its principal place of business in California.

14.   At the time the Complaint was filed, defendant Cerner Corporation was incorporated in Delaware (Compl. ¶ 4), with its principal place of business is Missouri.  Declaration of Mo Zayed ("Zayed Decl."), ¶ 3.  At the time of filing this Notice of Removal, Cerner Corporation remains a Delaware corporation with its principal place of business in Missouri.  Zayed Decl., ¶ 3; *see also* 28 U.S.C. § 1322(c) (corporation is "citizen" of both state in which it was incorporated and principal place of business).

15.   At the time the Complaint was filed, defendant Cerner Healthcare Solutions, Inc. was incorporated in Delaware (Compl. ¶ 6), with its principal place of business is Missouri.  Zayed Decl., ¶ 4; *see also* agreement attached to Complaint.  At the time of filing this Notice of Removal, Cerner Healthcare Solutions, Inc. remains a Delaware corporation with its principal place of business in Missouri.  Zayed Decl., ¶ 4.

16.   The defendant named as Cerner Etreby−Garden Grove is allegedly non-diverse because according to Plaintiff, it has its principal place of business in California.  Compl. ¶ 6.  However, to the knowledge, information, and belief of both the Defendants Cerner Corporation and Cerner Healthcare Solutions, Inc., Cerner Etreby–Garden Grove does not exist.   Zayed Decl., ¶ 5, Ex. A.

17.     Notably, Plaintiff attaches to its Complaint a contractual agreement that defines Cerner Healthcare Solutions, Inc. as "Cerner Etreby."  To the knowledge, information, and belief of both the Defendants Cerner Corporation and Cerner Healthcare Solutions, Inc., there is no separate legal entity bearing the "Cerner Etreby" name.  Zayed Decl., ¶ 5, Ex. A.

18.     "[F]raudulently joined defendants will not defeat removal on diversity grounds." *Ritchety v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998).  The citizenship of a fraudulently joined defendant is ignored for purposes of diversity. *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001).

19.     Cerner Etreby–Garden Grove should be disregarded because no possible cause of action can be stated against a party that does not exist.  *Weinstein v. Conoco Phillips*, No. 13-919, 2014 WL 868918, at *2 (W.D. La. Mar. 5, 2014) (finding fraudulent joinder stating, "[P]laintiffs have no reasonable basis for recovery against [non-diverse defendant], who … has no corporate existence…."); *see also Jernigan v. Ashland Oil, Inc.,* 989 F.2d 812, 816-17 (5th Cir. 1993) (affirming finding of fraudulent joinder where allegedly non-diverse co-defendant was merely division of diverse co-defendant and "had no independent existence").

20.     "28 U.S.C. § 1441(a) explicitly provides that the citizenship of defendants sued under fictitious names shall be disregarded for purposes of removal." *Newcombe v. Adolf Coors Co.*, 157 F.2d 686, 690 (9th Cir. 1998).  Thus, the citizenship of defendants sued under fictitious Doe names must be disregarded for the purpose of determining diversity jurisdiction and cannot destroy the diversity of citizenship between the parties in this action.

21.     None of the properly joined defendants are a citizen of California, the state in which this action is pending.

22.     Accordingly, Plaintiff Mari-Mina Pharmaceuticals, Inc. dba Del's Pharmacy is a citizen of a state different from each of the properly joined Defendants.

## B.   The Amount in Controversy Exceeds $75,000

23.   Plaintiff's Complaint is silent as to the amount in controversy.  The failure of the Complaint to specify the total amount of damages sought by Plaintiff, however, does not deprive this Court of jurisdiction.  *See McPhail v. Deere & Co.*, 529 F.3d 947, 954-55 (10th Cir. 2008); *Fox v. Foot Locker Retail*, No. 11cv2805 WQH (BGS), 2012 WL 216561, at *2 (S.D. Cal. Jan. 23, 2012).  Defendants need only establish by a preponderance of evidence that the claims exceed the jurisdictional minimum.  *McPhail*, 529 F.3d at 955.

24.   While Defendants deny Plaintiff's claims of wrongdoing, the allegations in Plaintiff's Complaint regarding the amount in controversy are as follows:

(a)   Plaintiffs assert four causes of action: (1) breach of contract, (2) violation of Consumer Legal Remedies Act ("CLRA"), (3) violation of California Unfair Competition Law ("UCL"), (4) breach of express and implied warranties (Compl. ¶¶ 28-67);

(b)   The relevant time period covering Plaintiff's claims is January 1, 2012 to the present (Compl. ¶ 13);

(c)   Plaintiff alleges that "the actions of Defendants have caused Plaintiff … to suffer extensive and irreparable damages."  (Compl. ¶ 27);

(d)   For its CLRA claim, Plaintiff seeks injunctive relief, damages "in an amount according to proof at trial," punitive damages, and attorneys' fees and costs. (Compl. ¶¶ 45, 48-50). *See Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001) ("It is well established that punitive damages are part of the amount in controversy in a civil action"); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (holding "attorneys' fees … may be included in the amount in controversy"); *Luna v. Kemira Specialty, Inc.*, 575 F.Supp.2d 1166, 1172 (C.D. Cal.

2008) (noting lawsuit seeking injunctive relief, amount in controversy measured by value of objection of litigation);

(e)    For its UCL claim, Plaintiff seeks disgorgement from Defendants of "all monies [allegedly] obtained as a result of the unlawful, unfair, and fraudulent business practices [allegedly] engaged by Defendants." (Compl. ¶ 61); and;

(f)    For the breach of warranties claim, Plaintiff asserts that it has been damaged in the "full amount of the purchase prices for the Products as well as continuing services …." (Compl. ¶ 66).

25.    Plaintiff demanded far in excess of $75,000 in a pre-suit demand for relief on its individual claims.  Zayed Decl., ¶ 6.

26.    Although Defendants deny Plaintiff's claims of wrongdoing, based upon the facial allegations in Plaintiff's Complaint and assuming *arguendo* Plaintiff were able to prove these allegations, the total amount of monetary relief sought by Plaintiff is in excess of $75,000, exclusive of interest and costs.

27.  Accordingly, because the Action is between citizens of different states and involves in excess of $75,000, removal is proper pursuant to 28 U.S.C. § 1332(a).

## IV.    SEPARATELY, THE COURT HAS INDEPENDENT JURISDICTION OVER PLAINTIFF'S CLAIMS PURSUANT TO CLASS ACTION FAIRNESS ACT ("CAFA")

28.    This Court also has original jurisdiction over this action under CAFA. 28 U.S.C. § 1332(d).  CAFA grants district courts original jurisdiction over civil class actions filed under federal or state law in which *any* member of a class of plaintiffs is a citizen of a state different from *any* defendant and where the amount in controversy for the putative class members exceeds $5,000,000, exclusive of interests and costs.  CAFA authorizes removal of such actions pursuant to 28 U.S.C.

§ 1446.  As set forth below, this case meets all of CAFA's requirements for removal and is timely and properly removed by the filing of this Notice.

### A.    Minimal Diversity Exists

29.    At the time the Complaint was filed, Plaintiff was a California corporation with its principal place of business in California.  Compl. ¶ 3.  At the time of filing this Notice of Removal, Plaintiff remains a California corporation with its principal place of business in California.

30.    At the time the Complaint was filed, defendant Cerner Corporation was incorporated in Delaware (Compl. ¶ 4), with its principal place of business is Missouri.  Zayed Decl., ¶ 3.  At the time of filing this Notice of Removal, Cerner Corporation remains a Delaware corporation with its principal place of business in Missouri.  Zayed Decl., ¶ 3.

### B.  There are At Least 100 Members in Plaintiff's Proposed Class

31.    This action has been styled as a class action.  Compl. ¶¶ 13-16.

32.    CAFA requires the existence of at least 100 members in Plaintiff's proposed class.  28 U.S.C. § (d)(5)(B).

33.    Plaintiff seeks to represent "pharmacists and/or pharmaceutical distributors who licensed and used the EPS software from Defendants in connection from Defendants in connection with providing medications and/or medical equipment to board and care, skilled nursing/convalescent and other non 'walk-in' facilities throughout the State of California from the time period of January 1, 2012 to the present."  Compl. ¶ 13.

34.    Here, Cerner Healthcare Solutions, Inc. has or has had more than 400 pharmacists and/or pharmaceutical distributors who licensed and used the EPS software from Defendants in the State of California from the time period of January 1, 2012 to the present.  Zayed Decl. ¶ 7.

/ / /

/ / /

## C.    The Amount in Controversy Exceeds $5 Million

35.    Plaintiff's Complaint is silent as to the total amount in controversy. The failure of the Complaint to specify the total amount of damages sought by Plaintiff does not, however, deprive this Court of jurisdiction. *See Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 397 (9th Cir. 2010); *Saulic v. Symantec Corp.*, No. SA CV 07-610 AHS (PLAx), 2007 WL 5074883, at *5 (C.D. Cal. Dec. 26, 2007). Notwithstanding Plaintiff's failure to allege the total amount of monetary relief claimed, CAFA authorizes the removal of class actions, in which the amount in controversy for all potential class members exceeds $5 million. *See* 28 U.S.C. § 1332(d); *Muniz v. Pilot Travel Centers* LLC, No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *1 (E.D. Cal. May 1, 2007). Under CAFA, Defendants need only to establish by a "preponderance of the evidence" that the claims exceed the jurisdictional minimum. *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013).

36.    While Defendants deny Plaintiff's claims of wrongdoing, the allegations in Plaintiff's Complaint and the total amount of compensatory damages, punitive damages, attorneys' fees, injunctive relief and other monetary relief at issue in this action, on an aggregate, class-wide basis, is in excess of this Court's jurisdictional minimum of $5 million. *See Saulic*, 2007 WL 5074883, at *8 (considering facts presented in notice of removal, including defendant's declaration, along with plaintiff's allegations in finding jurisdictional limits satisfied under CAFA).

37.    The license and service fees paid by the pharmacists and/or pharmaceutical distributors who licensed and used the EPS software from Defendants in the State of California from the time period of January 1, 2012 to the present far exceeds $5 million. Zayed Decl. ¶ 7.

38.    Accordingly, this case meets all of CAFA's requirements for removal and is timely and properly removed by the filing of this Notice.

# IV.   CONCLUSION

39.  WHEREFORE, having provided notice as required by law, the above-entitled action should be removed from the San Bernardino County Superior Court.

DATED: June  19, 2014                KELLEY DRYE & WARREN LLP
                                     Lee S. Brenner
                                     Catherine D. Lee

                                     By /s/ Lee S. Brenner
                                          Lee S. Brenner
                                     Attorneys for Defendants Cerner Corporation &
                                     Cerner Healthcare Solutions, Inc.

**EXHIBIT A**

**EXHIBIT A**

# CIV-140513-CIV-DS1406493-CASEEN-133902



## Scanned Document Coversheet

System Code:     CIV
Case Number:     DS1406493
Case Type:       CIV
Action Code:     CASEEN
Action Date:     05/13/14
Action Time:     1:39
Action Seq:      0002
Printed by:      NHYDU

THIS COVERSHEET IS FOR COURT
PURPOSES ONLY, AND THIS IS NOT
A PART OF THE OFFICIAL RECORD.
YOU WILL NOT BE CHARGED FOR
THIS PAGE

# Complaint and Party information entered



NEW FILE

SCANNED

1    PRATA & DALEY LLP
     Todd A. Daley (Bar No. 168742)
2    Cassandra J. Zappaterreno (Bar No. 208798)
     Donald J. Bordelove (Bar No. 280370)
3    515 South Figueroa Street
     Suite 1515
4    Los Angeles, California 90071
     (213) 622-5600
5    Facsimile (213) 622-5623

6    Attorneys for Plaintiff and the proposed class
     MARI-MINA PHARMACEUTICALS, INC.
7    dba DEL'S PHARMACY

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO CIVIL DIVISION

MAY 1 3 2014

BY _____
NICOLE HYDUKOVICH, DEPUTY

8

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                 FOR THE COUNTY OF SAN BERNARDINO

11

PRATA & DALEY LLP
515 SOUTH FIGUEROA STREET, SUITE 1515
LOS ANGELES, CALIFORNIA 90071
(213) 622-5600   FAX: (213) 622-53

12   MARI-MINA PHARMACEUTICALS, INC.  )   CLASS ACTION
     dba DEL'S PHARMACY, individually and on )
13   behalf of all others similarly situated,    )   Case No.:     CIVDS1406493
                                             )
14                      Plaintiff,           )   COMPLAINT FOR:
                                             )
15              vs.                          )   1.   BREACH OF CONTRACT;
                                             )
16   CERNER CORPORATION; CERNER            )
     ETREBY – GARDEN GROVE; CERNER         )   2.   VIOLATION OF THE CONSUMER
17   HEALTHCARE SOLUTIONS, INC.; and       )        LEGAL REMEDIES ACT,
     DOES 1-25, inclusive,                  )        CALIFORNIA CIVIL CODE § 1970 et.
18                                          )        seq.;
                     Defendants.            )
19                                          )   3.   VIOLATION OF CALIFORNIA
                                             )        UNFAIR COMPETITION LAW,
20                                          )        CALIFORNIA BUSINESS &
                                             )        PROFESSIONS CODE § 17200 et seq.;
21                                          )
                                             )   4.   BREACH OF EXPRESS AND IMPLIED
22                                          )        WARRANTIES    H0513 199
                                             )
23   _____ )   DEMAND FOR JURY TRIAL    1993

24                                                                    $435

25              On behalf of itself and all others similarly situated, Plaintiff Mari-Mina

26   Pharmaceuticals, Inc. dba Del's Pharmacy ("Plaintiff" or "Del's") sue Defendants, Cerner

27   Corporation, Cerner Etreby – Garden Grove, Cerner Healthcare Solutions, Inc., and Does 1-25

28   and in support thereof, state:

                              1

1

## SUMMARY OF THE CASE

2          1.          This lawsuit involves the creation, marketing and sale by Defendants

3   Cerner Corporation, Cerner Etreby – Garden Grove, Cerner Healthcare Systems, Inc., and Does

4   1-50 (collectively hereinafter "Cerner" or "Defendants") of a software program known by the

5   trademark, Etreby Pharmacy System ("EPS" or "Product") that Defendants marketed and

6   advertised to the public to be effective at ensuring fast, accurate and proper billing to third

7   parties who purchased pharmaceuticals from retail pharmacists and pharmacies.  Defendants

8   created and sold this software, and in doing so, made several representations as to its

9   effectiveness.  However, Defendants' representations were false, deceptive and inaccurate.  In

10  reality, the software was defective in that it failed to bill third parties fully, completely and

11  accurately, and failed to streamline billing and increase productivity for consumers who

12  purchased and used the software.  Despite Defendants' knowledge of the design defect in the

13  EPS software, Defendants have failed to disclose the existence of the defect to consumers.

14          2.          As a result of the facts alleged herein, Defendants' actions violated the

15  Consumers Legal Remedies Act ("CLRA"), breached express warranties made by Defendants,

16  breached implied contractual warranties imposed by law, and violated numerous state consumer

17  protection statutes and common laws.  This lawsuit is brought by Plaintiff on behalf of itself and

18  the members of the Class and Subclasses to seek redress for these violations and breaches.

19

## PARTIES

20          3.          Plaintiff is a California Corporation with its principal place of business in

21  San Bernardino County, California.  Plaintiff licensed the EPS software from Defendants.

22  Plaintiff was unaware that the EPS software it licensed suffered from the design defect alleged

23  herein.  Had Defendants disclosed the existence of the defect, Plaintiff would not have licensed

24  the software.

25          4.          Defendant, Cerner Corporation, is a commercial manufacturer, distributor

26  and/or retailer of the EPS software, incorporated and licensed under the laws of the State of

27  Delaware that that does business in California and throughout the United States.

28  ///

2

PRATA & DALEY LLP
515 SOUTH FIGUEROA STREET, SUITE 1515
LOS ANGELES, CALIFORNIA 90071
(213) 622-5600   FAX: (213) 622-53

1         5.      Defendant, Cerner Etreby – Garden Grove is a commercial manufacturer,

2  distributor and/or retailer of the EPS software, that does business in California with its principal

3  place of business in Garden Grove, California.

4         6.      Defendant, Cerner Healthcare Systems, Inc. is a commercial

5  manufacturer, distributor and/or retailer of the EPS software, incorporated and licensed under

6  the laws of the State of Delaware that that does business in California and throughout the United

7  States.

8         7.      The true names and capacities, whether individual, corporate, partnership,

9  principal, agent, associate, employee, or otherwise of Defendant Does 1 through 25, inclusive,

10  are unknown to Plaintiff who therefore sues these Defendants by such fictitious names pursuant

11  to *Code of Civil Procedure*§ 474. Plaintiffs will amend this Complaint to allege their true

12  names and capacities when they are ascertained.

13         8.      Plaintiffs are informed and believe, and based upon that information and

14  belief allege, that each of the Defendants, including Does 1 through 25, inclusive, in performing

15  or omitting to perform the acts alleged hereinafter, operated jointly with each of the other

16  Defendants in furtherance of a common business interest where each Defendant shared in the

17  profits, control and ownership of the enterprise. Consequently, each Defendant is jointly and

18  severally liable to Plaintiff and the other members of the class for the damages sustained as a

19  proximate result of their conduct.

20         9.      Plaintiff is further informed and believes, and based on that information

21  and belief alleges, that each Defendant named in the Complaint, including Does 1 through 25,

22  inclusive, knowingly and willfully entered into and acted in concert as part of a common plan

23  to, among other things, damage Plaintiff and to otherwise consciously and/or recklessly act in

24  derogation of Plaintiff's rights. The conspiracy and Defendants concerted actions were such

25  that, to Plaintiffs' information, and belief to all appearances, each Defendant represented a

26  unified body so that the actions of one Defendant were accomplished in concert with, and with

27  knowledge, ratification, authorization and approval of each of the other Defendants.

28  ///

PRATA & DALEY LLP
515 SOUTH FIGUEROA STREET, SUITE 1515
LOS ANGELES, CALIFORNIA 90071
(213) 622-5600  FAX: (213) 622-53

3

**JURISDICTION AND VENUE**

10.     This Court has subject matter jurisdiction over the claims asserted in this action pursuant to *California Code of Civil Procedure* § 382, *California Civil Code* § 1970, *et seq., California Business and Professions Code* § 17200, *et seq.,* and other relief based in law and equity including Defendants principal place of business. Plaintiff brings this action on behalf of itself and all persons (the "Plaintiff Class" or the "Class") who were subjected to the unlawful, unfair, and fraudulent business practices as alleged herein. Plaintiff further brings this action on behalf of all persons within the Class as defined herein.

11.     This Court has personal jurisdiction over Defendants because Defendants maintain sufficient contacts in this jurisdiction, including the marketing, manufacturing, distribution, licensing and/or retailing of the EPS software in this jurisdiction. Defendants' extensive business and advertising engagements with California residents constitute purposeful availment of this forum sufficient to subject Defendants to suit in this forum. Because of Defendants' significant contacts with this forum, assertion of jurisdiction to remedy Defendants' conduct does not offend traditional notions of fair play and substantial justice.

12.     Venue is proper in this Court because a substantial part of the events and omissions giving rise to the claims occurred in this venue, including the marketing, manufacturing, distribution, licensing and/or retailing of the EPS software in this venue.

**CLASS ACTION ALLEGATIONS**

13.     Plaintiff brings this action both individually and as a class action against Defendants, on its own behalf and on behalf of any pharmacists and/or pharmaceutical distributors who licensed and used the EPS software from Defendants in connection with providing medications and/or medical equipment to board and care, skilled nursing/convalescent and other non "walk-in" facilities throughout the State of California from the time period of January 1, 2012 to the present.

14.     At all material times, Plaintiff was, and is, within the Class described in paragraph 13 of this Complaint.

///

PRATA & DALEY LLP
515 SOUTH FIGUEROA STREET, SUITE 1515
LOS ANGELES, CALIFORNIA 90071
(213) 622-5600   FAX: (213) 622-53

1    15.    The claims of Plaintiff are typical of the claims of the Class that it seeks

2  to represent. Plaintiff will fairly and adequately protect the interests of the Class that it seeks to

3  represent. Plaintiff does not have any interest that is antagonistic to the Class that it seeks to

4  represent. Counsel for Plaintiff is experienced, qualified, and able to conduct complex class

5  action litigation.

6    16.    This Court should permit this action to be maintained as a class action

7  pursuant to *California Code of Civil Procedure* § 382 because:

8    a.    The questions of laws and fact common to the Class predominate

9  over any question affecting individual members;

10    b.    A class action is superior to any other available method for the

11  fair and efficient adjudication of the claims of the members of the Class;

12    c.    The Class is so numerous that is it impractical to bring all

13  members of the Class before the Court;

14    d.    Plaintiff, and the other members of the Class, will not be able to

15  obtain effective and economic legal redress unless the action is maintained as a class action;

16    e.    There is a community of interest in obtaining appropriate legal

17  and equitable relief for the common law and statutory violations and other improprieties, and in

18  obtaining adequate compensation for the damages and injuries that Defendants' actions have

19  inflicted upon the Class;

20    f.    There is a community of interest in ensuring that the combined

21  assets and available insurance of the Defendants are sufficient to compensate adequately the

22  members of the Class for the injuries sustained;

23    g.    Without class certification, the prosecution of separate actions by

24  individual members of the Class would create a risk of:

25    i.    Inconsistent or varying adjudications with respect to

26    individual members of the Class, which would establish

27    incompatible standards of conduct for Defendants, and/or,

28  ///

PRATA & DALEY LLP
515 SOUTH FIGUEROA STREET, SUITE 1515
LOS ANGELES, CALIFORNIA 90071
(213) 622-5600   FAX: (213) 622-53

5

1
2
3
4
5
6
7
8
9
10
11

     ii.  Adjudications with respect to the individual members that would, as a practical matter, be dispositive of the interests of other members not parties to the adjudications, or would substantially impair or impede their ability to protect their interests including, but not limited to, the potential for exhausting the funds available from those parties who are, or may be, responsible Defendants; and

    h.  Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

## THE CONDUCT

  17.  Plaintiff is a pharmaceutical distributor in the business of selling medication to board and care, skilled nursing/convalescent, and other non "walk-in" facilities who provide the mediation to their patients. In the regular course of plaintiffs' business, particular care must be taken when submitting claims to insurance companies because long-term care (non-retail) claims are reimbursed at a different rate than retail claims. To ensure each claim is processed and paid out accordingly, claims must be submitted with a designated code, distinguishing long-term care from retail claims. Failure to do so will result in either insufficient payment to the pharmacy or no payment at all.

  18.  Defendants are providers of Pharmacy Business Management ("PBM") tools in the United States. They own, install, license and service the EPS software. At all material times Defendants represented EPS as a "one-stop software technology," designed to operate on an "easy-to-use Windows-based platform" to "streamline a pharmacy's everyday functions and increase its productivity."

  19.  At all times relevant herein, Defendants understood and acknowledged that their customers desired streamlined efficiency and increased workflow in their pharmacy function and thus licensed Etreby for that very purpose. If working properly, EPS was designed to allow its user to submit claims simply by entering a few codes into the software system. Once

6

1    entered, the software would process the information and prepare the claim to be submitted to its

2    respective processor for payment.

3            20.      On or about December 19, 2008, Plaintiff and Defendants entered into a

4    contract entitled, Cerner Software License and Support Agreement (the "Agreement"). A true

5    and correct copy of the Agreement has been attached hereto as Exhibit "A". Pursuant to the

6    Agreement, Defendants granted to Plaintiff, a non-exclusive, non-transferable license to use its

7    EPS software. Additionally, the Agreement provided for software support services "for so long

8    as the Client continues to pay monthly fees as set forth in [the Agreement]." At all times

9    relevant herein, Plaintiff was an active paying licensee of the EPS software.

10           21.      The National council for Prescription Drug Programs ("NCPDP")

11    maintains the telecommunication standard for transactions in the healthcare industry.

12    Specifically, the NCPDP determines the guidelines related to the structure of certain PBM

13    software such as Etreby[1]. Effective January 1, 2012, the NCPDP maintained that a new version

14    of their telecommunication standard be implemented, entitled 'NCPDP D.0' ("D.0").

15    Particularly, D.0 refined the structure and provided provisions to share detailed information

16    across the PBM, its user-pharmacy and the provider. Apart from the enhancement to the

17    structure of the electronic transmission format, D.0 specifically focused on coordination of

18    benefits, claims for compound drugs, and sharing detail about members' utilization and cost-

19    sharing as part of real-time transactions.

20           22.      On or about December 28, 2011, Defendants issued its first full D.0

21    update for Etreby, claiming that was the earliest date it could do so because NCPDP had not yet

22    finalized its telecommunication standard requirements until late December, 2011. This was

23    patently false, as other similar software providers had their D.0 updates in place months before

24    Defendants did.

25    ///

26

27

28    [1] NCPDP telecommunication standard 5.1 was made effective from 2000 onwards, with few intermediate changes that were made to support the need for additional transactions due to changes in the healthcare industry such as Medicare Part-D plans.

PRATA & DALEY LLP
515 SOUTH FIGUEROA STREET, SUITE 1515
LOS ANGELES, CALIFORNIA 90071
(213) 622-5600   FAX: (213) 622-53

7

1         23.     On January 1, 2012, Defendants retired its old Etreby standard (version

2    5.1) and transitioned to the updated D.0 (the "Conversion"). As explained by Defendants to

3    Plaintiff, the required D.0 update was to be used in all pharmacy transactions utilizing the EPS

4    software to ensure the least amount of rejected claims. In fact, D.0 was supposed to function the

5    same as the previous version 5.1 claim format, but contained new, modified fields.

6         24.     In fact, version D.0 did not function the same as its predecessor. Whereas

7    the previous version only required its user to input a few simple codes, the updated D.0

8    contained additional programmatic steps, which placed upon its user the onerous task of

9    inputting multiple codes in order to submit a claim for long term care claims.

10        25.     Furthermore, Defendants experienced numerous problems with its

11   Conversion from the outset. During the initial weeks following the Conversion, Defendants

12   were continuously updating, changing, and/or fixing its software on an almost hourly basis,

13   which affected Plaintiff's ability to be paid properly, if at all, for certain claims.

14        26.     Moreover, when Defendants finally "fixed" their software issues so that

15   Plaintiff could realize some payments, the payments received reflected claims submitted at the

16   retail rate, as opposed to the proper rate causing a substantial monetary discrepancy. Moreover,

17   other claims were never paid due to the defective software.

18        27.     By failing to timely update its Etreby software, failing to properly fix

19   software issues brought to its attention by customers, and by failing to provide to customers

20   advice and/or documentation about how to remedy customers' purported problems, the actions

21   of Defendants have caused Plaintiff, and those similarly situated, to suffer extensive and

22   irreparable monetary damages.

23   <center>**FIRST CAUSE OF ACTION**</center>

24   <center>**FOR BREACH OF CONTRACT**</center>

25   <center>**(By Plaintiff and the Plaintiff Class and Against all Defendants)**</center>

26        28.     Plaintiff realleges and incorporates by reference, each and every

27   allegation contained in paragraphs 1 through 27.

28   ///

<center>8</center>

PRATA & DALEY LLP
515 SOUTH FIGUEROA STREET, SUITE 1515
LOS ANGELES, CALIFORNIA 90071
(213) 622-5600   FAX: (213) 622-53

1            29.     Plaintiff brings this claim for relief on behalf of itself and the members of

2 the Plaintiff Class.

3            30.     On or about December 19, 2008, Plaintiff and Defendants entered into a

4 the Agreement. A true and correct copy of the Agreement has been attached hereto as Exhibit

5 "A".

6            31.     Pursuant to the Agreement, Defendants granted to Plaintiff, a non-

7 exclusive, non-transferable license to use its EPS software for an Initial Term of one (1) year,

8 with automatic renewals for additional one (1) year periods up to and until either party provides

9 to the other written notice of Termination. Additionally, the Agreement provided for Software

10 support services to Plaintiff "for so long as the Client continues to pay monthly fees as set forth

11 in [the Agreement]."

12            32.     At all times relevant herein, Plaintiff was an active paying licensee of the

13 EPS software up to and until the filing of this Complaint.

14            33.     Defendants breached their written Agreement with Plaintiff by failing to

15 provide adequate software support and/or training as further described above.

16            34.     Plaintiff has performed each and every covenant, condition and obligation

17 to be performed by it under the Agreement, except to the extent excused, waived, or made

18 impossible by Defendants' conduct.

19            35.     As a direct and proximate result of Defendants' breaches of the

20 Agreement as alleged above, Plaintiff, and those similarly situated, have been and will be

21 damaged in an amount not yet ascertained according to proof.

22 <div align="center">**SECOND CAUSE OF ACTION**</div>

23 <div align="center">**FOR VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT**</div>

24 <div align="center">**[CAL. CIV. CODE § 1970 *et seq.*]**</div>

25 <div align="center">**(By Plaintiff and the Plaintiff Class and Against all Defendants)**</div>

26            36.     Plaintiff realleges and incorporates by reference, each and every

27 allegation contained in paragraphs 1 through 35.

28 ///

PRATA & DALEY LLP
515 SOUTH FIGUEROA STREET, SUITE 1515
LOS ANGELES, CALIFORNIA 90071
(213) 622-5600 FAX: (213) 622-53

<div align="center">9</div>

1        37.   Plaintiff brings this claim for relief on behalf of itself and the members of

2   the Plaintiff Class.

3        38.   "Services," as defined by the Consumer Legal Remedies Act ("CLRA"),

4   Cal. Civ. Code § 1761(b) and used herein, means work, labor and services furnished in

5   connection with the sale or repair of goods.  Software support and training furnished in

6   connection with the sale or repair of licensed computer software falls within the ambit of this

7   definition.

8        39.   Each Defendant is a "Person" as that term is defined by the CLRA, Cal.

9   Civ. Code § 1761(c). Defendants are in the business of installing and servicing its software that

10  it licenses to consumers.

11       40.   Plaintiff, and the members of the Plaintiff Class, are "Consumers" which,

12  as defined by the CLRA, Cal. Civ. Code § 1761(d) and used herein, means individuals who seek

13  or acquire, by purchase or lease, any goods or services for personal, family or household

14  services.

15       41.   Plaintiff is informed and believes, and based upon that information and

16  belief alleges, that Defendants misrepresented to consumers, including Plaintiff, that as

17  licensees of its software throughout the State of California, Plaintiff and members of the

18  Plaintiff Class would receive proper software support and services as specified in their

19  respective Software License and Support Agreements.  Defendants made this misrepresentation

20  by marketing its software as "efficient" and "easy to use" and by offering "qualified support

21  service employees" to its licensees.  When Defendants actively misrepresented the accuracy of

22  its software, or the breadth of its software support services, its actions were misleading and

23  fraudulent.

24       42.   The CLRA prohibits certain unfair acts or practices directed toward

25  consumers.  Specifically, section 1770(a) of the CLRA prohibits anyone, inter alia, from:

26       (5) Representing that goods or services have sponsorship, approval,

27       characteristics, ingredients, uses, benefits, or quantities which they do

28       not have or that a person has a sponsorship, approval, status, affiliation,

10

PRATA & DALEY LLP
515 SOUTH FIGUEROA STREET, SUITE 1515
LOS ANGELES, CALIFORNIA 90071
(213) 622-5600   FAX: (213) 622-53

1    or connection which he or she does not have.

2                                    ***

3         (9) Advertising goods or services with intent not to sell them as

4              advertised.

5         43.    The factual allegations set forth herein serve as the basis for Plaintiff's

6    claims. In greater detail, Defendants, in connection with its alter egos and/or ostensible or

7    actual agents, has engaged in the following conduct constituting violations of the CLRA:

8              a.    Failing to provide its EPS software with accurate data and pricing;

9              b.    Failing to provide its licensees with the requisite D.0 update on a

10             timely basis; and

11             c.    Failing to communicate to its licensees regarding data and pricing

12             errors with respect to the Etreby software.

13        44.    Plaintiff and members of the Plaintiff Class were not aware of the

14   deficiencies of the EPS software and Defendants' software support services until after it had

15   been licensed, and at all times believed that they were receiving the services and software that

16   was marketed and represented to them by Defendants.

17        45.    Pursuant to Cal. Civ. Code § 1782(d), Plaintiff seeks, on behalf of itself

18   and the Plaintiff Class, injunctive relief under the specified provisions of Section 1770.

19        46.    Pursuant to section 1782(a) and (d) of the CLRA, on January 29, 2014,

20   Plaintiff, by and through its counsel, notified Defendants, in writing by certified mail, return

21   receipt requested, addressed to Defendants' headquarters and place of business in California, of

22   the various CLRA violations as are alleged herein. The notice and demand letter set forth

23   Defendants' particular violations of the CLRA, as alleged herein, and demanded that

24   Defendants correct those violations.

25        47.    More than thirty days have passed since Defendants received Plaintiff's

26   notice and demand letter; however, Defendants have failed to remedy the wrongs that have been

27   suffered by the consuming public.

28   ///

11

1           48.    As a direct and proximate result of Defendants' violations of the CLRA,

2  Plaintiff and the Plaintiff Class have been damaged in an amount according to proof at trial.

3           49.    Pursuant to Cal. Civ. Code § 1780, plaintiff seeks judicial orders of an

4  equitable nature, including, but not limited to, an order enjoining Defendants from engaging in

5  the conduct complained of herein.

6           50.    So as not to be unjustly enriched by its own wrongful actions and

7  conduct, Defendants should be required to disgorge and restore to Plaintiff and members of the

8  Plaintiff Class all monies wrongfully obtained by Defendants through licensing and support

9  fees, as a result of their violations of the CLRA, together with interest thereon.

10         51.    The acts and conduct of Defendants were carried out in a deliberate,

11  calculating, willful, intentional, and malicious manner, and with the specific intent to injure

12  Plaintiff and members of the Plaintiff Class. As a result, Plaintiff and the plaintiff class are

13  entitled to exemplary and punitive damages against Defendants sufficient to punish Defendants

14  and deter this type of conduct in the future.

15         52.    Pursuant to Cal. Civ. Code § 1780, Plaintiff requests an award of all court

16  costs and attorney's fees.

17                  **THIRD CAUSE OF ACTION**

18            **FOR UNLAWFUL, UNFAIR, AND**

19          **FRAUDULENT BUSINESS PRACTICES**

20         **[CAL BUS. & PROF. CODE § 17200 *et seq.*]**

21         53.    Plaintiff realleges and incorporates by reference, each and every

22  allegation contained in paragraphs 1 through 52, inclusive.

23         54.    Plaintiff brings this claim for relief on behalf of itself and the members of

24  the Plaintiff Class.

25         55.    Defendants are a "Person" as defined under Cal. Bus. & Prof. Code

26  § 17021.

27         56.    The actions and conduct of Defendants, as described herein, constitute

28  unlawful, unfair, and fraudulent business practices within the meaning of Cal. Bus. & Prof.

PRATA & DALEY LLP
515 SOUTH FIGUEROA STREET, SUITE 1515
LOS ANGELES, CALIFORNIA 90071
(213) 622-5600 FAX: (213) 622-53

12

1  Code § 17200, *et seq.*

2      57.    The practices of Defendants are unfair, unlawful, and fraudulent because

3  they defrauded Plaintiff and members of Plaintiff class by misrepresenting the efficiency and

·4  ease-of-use of its software, and quality of its support service employees, as further alleged

5  herein.  Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff is entitled to injunctive relief and

6  such other appropriate orders as may be necessary to curb and restrain the unfair, unlawful, and

7  fraudulent practices engaged by defendant.

8      58.    Defendants' business acts and practices violated various state laws,

9  including, inter alia, the California Business and Professions Code § 17500 *et seq.*, which

10  prohibits false advertising, and the California Consumer Legal Remedies Act, California Civil

11  Code § 1750 *et seq.*  Defendants have engaged in "unfair" business acts or practices in that it

12  failed to inform Plaintiff and the Class that tis Products were not effective at ensuring fast,

13  accurate and proper billing to third parties who purchased pharmaceuticals from retail

14  pharmacists and pharmacies.  Defendants representations to consumers were false including, but

15  not limited to, that the EPS software would bill third parties fully, completely and accurately so

16  users of the EPS software would be reimbursed quickly and paid correctly for all

17  pharmaceuticals distributed to third parties; would properly bill third parties following the

18  NCPDP D.0 update, which went into effect as of January 1, 2012; would "streamline" billing

19  and "increase productivity" for consumers who licensed the software; that the EPS software was

20  "easy to use"; would allow for "quick, accurate reconciliation, without requiring double-entry of

21  data"; would have an "instant reaction to payment errors" and would reconcile payment errors

22  "immediately"; would be updated on a timely basis, and in fact, was correctly updated to

23  comply with NCPDP D.0 requirements; and that Cerner would provide "qualified support

24  service employees" to assist consumers who used the EPS software with troubleshooting and

25  support system errors.  Further, Defendants' conduct enabled them to price the Products above

26  the true market value of properly labeled products.  Thus, Defendants unfairly diverted sales to

27  itself that it would not have otherwise obtained and exacted a premium price that would not

28  otherwise have been paid.  Defendants' actions also constitute "fraudulent" business acts or

PRATA & DALEY LLP
515 SOUTH FIGUEROA STREET, SUITE 1515
LOS ANGELES, CALIFORNIA 90071
(213) 622-5600   FAX: (213) 622-53

1  practices in that its conduct had a tendency and likelihood to deceive person to whom such

2  conduct is targeted by designing, manufacturing and distributing the Products when in fact they

3  were not suitable for their intended uses.

4           59.    Plaintiff and the Class were deceived by Defendants' representations and

5  relied on those representations. This reliance was reasonable under the circumstances.

6           60.    Plaintiff and the Class have suffered injuries as a direct and proximate

7  result of Defendants' actions and would not have purchased the Products had they known of the

8  true characteristics of the product or would not have purchased them at those high prices.

9           61.    To avoid the unjust enrichment by its own wrongful actions and conduct,

10  Defendants should be required to disgorge and restore to Plaintiff and members of the Plaintiff

11  Class all monies wrongfully obtained as a result of the unlawful, unfair, and fraudulent business

12  practices engaged by Defendants.

13  <div align="center">

**FOURTH CAUSE OF ACTION**

14  **FOR BREACH OF EXPRESS WARRANTY AND IMPLIED WARRANTY OF**

15  **MERCHANTABILITY**

16  **(By Plaintiff and the Plaintiff Class and Against all Defendants)**
</div>

17           62.    Plaintiff realleges and incorporates by reference, each and every

18  allegation contained in paragraphs 1 through 61, inclusive.

19           63.    Plaintiff and the Class bought a consumer good sold and/or manufactured

20  by Defendants and at the time of purchase, Defendants were in the business of selling and/or

21  manufacturing consumer goods.

22           64.    Defendants affirmations of fact and promises made to Plaintiff and the

23  Class regarding the Products and its descriptions of the Products as contained in Defendants'

24  advertisement and labeling and became part of the basis of the bargain between Defendants and

25  Plaintiff and the Class, thereby creating express warranties that the Products would conform to

26  the affirmations of fact, promises and descriptions. Namely, Defendants expressly warranted to

27  Plaintiffs that the Products would be effective at ensuring fast, accurate and proper billing to

28  third parties who purchased pharmaceuticals from retail pharmacists and pharmacies.

PRATA & DALEY LLP
515 SOUTH FIGUEROA STREET, SUITE 1515
LOS ANGELES, CALIFORNIA 90071
(213) 622-5600   FAX: (213) 622-53

14

1  Defendants represented to consumers that the EPS software would bill third parties fully,
2  completely and accurately so users of the EPS software would be reimbursed quickly and paid
3  correctly for all pharmaceuticals distributed to third parties; would properly bill third parties
4  following the D.0 update; would allow for "quick, accurate reconciliation, without requiring
5  double-entry of data"; would have an "instant reaction to payment errors"; and would be
6  updated on a timely basis, and in fact, was correctly updated to comply with D.0 requirements.
7  Defendants breached these express warranties as indicated above.

8          65.     Because Defendants knew that the Products were in breach of its express
9  warranties at the time it sold them to Plaintiff and the Class and because the Products cannot be
10 repaired to conform to the warranties or replaced with products that conform to the warranties,
11 notice of Defendants' breach of warranty was not required. Alternatively, out of an abundance
12 of caution, Plaintiff gave such notice on behalf of itself and on behalf of the Class via letter to
13 counsel of record for Defendant on January 29, 2014.

14         66.     The consumer goods were not of the same quality as those generally
15 acceptable in the trade, and/or were not fit for the ordinary purposes for which such goods are
16 used; and/or did not measure up to the promises or facts stated on the container or label.

17         67.     As a proximate result of Defendants' breaches of express warranties,
18 Plaintiff and the Class have been damages either in the full amount of the purchase prices of the
19 Products as well as continuing services or in the difference in value between the Products as
20 warranted and the Products as actually sold.

21

22                                        **PRAYER**

23         WHEREFORE, Plaintiff, individually and on behalf of the other members of the
24 Class proposes in this Class Action Complaint, respectfully request that the Court enter
25 judgment in its favor and against Defendants, as follows:

26         A.      Declaring that this action is a proper class action, certifying the Class as
27 requested herein, designating Plaintiff as Class Representative and appointing the undersigned
28 counsel as Class Counsel;

15

1    B.    Ordering Defendants to pay actual damages (no less than the statutory

2  minimum damages) and equitable monetary relief to Plaintiff and the other members of the

3  Class;

4    C.    Ordering Defendant to pay punitive damages, as allowed by law, to

5  Plaintiff and the other members of the Class;

6    D.    Ordering Defendants to pay statutory damages, as allowable by the

7  statutes asserted herein, to Plaintiff and the other members of the Class;

8    E.    Awarding injunctive relief as permitted by law or equity, including

9  enjoining Defendants from continuing the unlawful practices as set forth herein, and ordering

10  Defendants to engage in a corrective advertising campaign;

11    F.    Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff

12  and the other members of the Class as allowable by the statutes asserted herein;

13    G.    Ordering Defendants to pay both pre- and post-judgment interest on any

14  amounts awarded; and

15    H.    Ordering such other and further relief as may be just and proper.

16                              **JURY DEMAND**

17    Plaintiff demands a trial by jury of all appropriate claims in this Class Action

18  Complaint.

19

20  DATED: May 9, 2014

21                              PRATA & DALEY LLP

22

23                              By _____
24                                   Todd A. Daley
                                     Cassandra J. Zappaterreno
25                                   Donald J. Bordelove
                                     Attorneys for Plaintiff and the proposed class
26                                   MARI-MINA PHARMACEUTICALS, INC,
                                     dba DEL'S PHARMACY
27

28

                                        16

PRATA & DALEY LLP
515 SOUTH FIGUEROA STREET, SUITE 1515
LOS ANGELES, CALIFORNIA 90071
(213) 622-5600  FAX: (213) 622-53

1

2

3

.4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PRATA & DALEY LLP
515 SOUTH FIGUEROA STREET, SUITE 1515
LOS ANGELES, CALIFORNIA 90071
(213) 622-5600   FAX: (213) 622-53

**AFFIDAVIT OF CASSANDRA J. ZAPPATERRENO**

I, Cassandra J. Zappaterreno, declare as follows:

1.      I am an attorney duly licensed to practice law in the State of California and a partner in the law firm of Prata & Daley LLP, counsel of record for plaintiff, Mari-Mina Pharmaceuticals, Inc. dba Del's Pharmacy, in this case. I am admitted to practice law in California and before this Court, and am a member in good stating of the State Bar of California. This declaration is made pursuant to California Civil code section 1780(d). I make this affidavit based on my research of public records and upon personal knowledge as to the matters set forth herein, and if called as a witness, I could and would competently testify thereto.

2.      Based on my research and personal knowledge, Defendants do business within the County of San Bernardino as well as having its principal place of business in California, and Plaintiff purchased Defendants' product within the County of San Bernardino, as alleged in this Class Action Complaint.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 9th day of May, 2014, at Los Angeles, California.

_Cassandra J. Zappaterreno_
Cassandra J. Zappaterreno

17

2008-12-18-23:17 12/19/2008 10:52 9094659282 SAM NOHA >> P 2 PAGE 01/19

*Attn Birgit*



**CERNER** Etreby™

Client: Def's Pharmacy
10700 Jersey Blvd. #330, 340
Rancho Cucamonga, CA 91730

Invoice No: EXEQ, 1-15AJVX3
Invoice Date: December 19, 2008
Due Date: Execution

Remit: Via FedEx:
Cerner Corporation
Attn: Accounts Receivable 5th Floor
2800 Rockcreek Parkway
Kansas City, MO 64117

(or) Via Wire Transfer:
ABA Routing Number: 101000187
Bank: US Bank
For Further Deposit to Bank Account: 5230000743

**AMOUNT DUE:** $2,661

Sales, tax, if applicable, will be invoiced separately.

If there are questions regarding this invoice, please contact Cerner Etreby at (800) 292-5590, option 3.

| Agreement No. | Description | Total Product Amt. | Percent Billed | Net Amount |
|---|---|---|---|---|
| 1-15AJVX3 | One Time Licensed Software Fees | $5,321 | 50% | $2,661 |
| | | | Total Amount Due: | $2,661 |

1



## CERNER SOFTWARE LICENSE AND SUPPORT AGREEMENT

This Cerner Software License and Support Agreement (the "Agreement") is made on December 19, 2008 ("Effective Date")
between

Del's Pharmacy ("Client")                          and        Cerner Healthcare Solutions , Inc. ("Cerner Etreby")

a California corporation with its principal place of            a Delaware corporation with its principal place of
business at:                                                   business at:

10700 Jersey Blvd. #330 , 340                                  2800 Rockcreek Parkway
Rancho Cucamonga, CA 91730                                     Kansas City, MO 64117, U.S.A.
Telephone: (909) 948-0208                                      Telephone: (816) 221-1024

This Agreement consists of the documents listed below.

* Basic Terms and Conditions
* Exhibit A  -  Cerner.com Restricted Access Agreement
* Exhibit B  -  Total Switch Contract
* Exhibit C  -  Business Associate Contract
* Cerner System Schedule No. 1

Cerner Etreby and Client may execute additional Cerner System Schedules or Arrangement Letters to effect the provision of
additional Software and products in the future, which will be subject to the terms and conditions of this Agreement.

DEL'S PHARMACY                                                 CERNER HEALTHCARE SOLUTIONS, INC.

By:                                                           By:

SAM ROKES                                                              John Landis
(Typed or printed)

Title:  Pharmacist                                           Title:           Senior Vice President

SIGNATURE PAGE

CERNER
Etreby
Del's Pharmacy
1-16A/VX3

Rev 09,08,08

3

## CERNER SOFTWARE LICENSE AND SUPPORT AGREEMENT

### BASIC TERMS AND CONDITIONS

Cerner Etreby owns, installs and services the software program known by the trademark "ETREBY PHARMACY SYSTEM". For good and valuable consideration, Cerner Etreby hereby grants to Client, and Client accepts a non-exclusive, non-transferable license to use the ETREBY PHARMACY SYSTEM software programs set forth on Attachment I of a Cerner System Schedule (the "Software") on the terms and conditions set forth herein.

### I.    DEFINITIONS.

The following definitions apply to capitalized terms in this Agreement. All other capitalized terms are defined in the body of the Agreement. The terms "days" and "months" refer to U.S. calendar days and months, rather than to business days and business months, unless expressly noted.

1.1    **Arrangement Letter** shall mean the document signed by both Cerner Etreby and Client identified as an Arrangement Letter and setting forth the work effort, deliverables, responsibilities and associated fees for services that are outside the scope of work originally identified in a Cerner System Schedule.

1.2    **Cerner System Schedule(s)** shall mean all the document(s) setting forth the item(s) of the ETREBY PHARMACY SYSTEM being purchased by Client, scope of use, pricing, payment terms and any other relevant terms.

1.3    **Confidential Information** shall mean all technical, business, financial and other information that is disclosed by either party to the other, whether orally or in writing, all individually-identifiable patient information, information relating to the status of installation, any disputes or disagreements between the parties, and all the terms and conditions of this Agreement (and the substance of the negotiations leading to it), all Cerner Etreby pricing information, and all non-publicly available information related to Cerner Etreby products (including without limitation, the ETREBY PHARMACY SYSTEM), services and/or methodologies. "Confidential Information" will not include any information (a) that is publicly available through no breach of this Agreement by Client or Cerner Etreby, (b) that is independently developed or was previously known by Client or Cerner Etreby, or (c) that is rightfully acquired by Client or Cerner Etreby from a third party not under an obligation of confidentiality.

1.4    **Data** shall mean all (a) data that is collected, stored, or generated through the use of the Software and (b) Cerner Etreby-requested data that is not collected, stored, nor generated through the use of any Software. In each case requested by Cerner Etreby and subsequently transmitted to, or retrieved by Cerner Etreby for storage.

1.5    **Documentation** shall mean any user documentation, on any media, provided by Cerner Etreby for use with the Software.

1.6    **Software** shall include any ETREBY PHARMACY SYSTEM software which is licensed by Cerner Etreby to Client, and set forth on Attachment I of a Cerner System Schedule including any error corrections and bug fixes provided by Cerner Etreby.

### II.    SCOPE OF USE, DATA AND PROPRIETARY RIGHTS.

2.1    **Scope of Use.** Client may use the Software only at the pharmacy location set forth on Attachment I of a Cerner System Schedule. Client agrees to notify Cerner Etreby promptly in writing of any change in place of business, and thereafter Cerner Etreby will modify the Software to accommodate changes to the status file and will charge a reasonable transfer and programming fee. Client may add other pharmacy locations (that are owned by Client) within the United States or U.S. Territories (the "Territory") upon written notice to Cerner Etreby and payment of additional Software and support fees.

2.2    **Access to Data.** Client grants to Cerner Etreby an irrevocable, nonexclusive, perpetual, world-wide, royalty-free right and license to use all Data (with Obvious Identifiers removed) for any purpose permitted by law, including, without limitation, (i) analysis and incorporation of the Data in databases, reports, comparative data sets, scores or scoring systems generated there from; and (ii) creation and distribution of works and derivative works based on the Data. Any Data that contains an element that by itself, or in combination with any other data elements allows re-identification of a person, is considered Confidential Information under this Agreement. Cerner Etreby will provide, install, and support the tools to perform the data extraction of Data that is collected, stored or generated through the use of the Licensed Software without charge. Client agrees to provide the technical and communications infrastructure required to temporarily store and send the extracted Data by mutually acceptable electronic means.



Del's Pharmacy
1-15AJVX3

2.3 **Assignment.** Client shall have no right to assign or grant any sublicense or lease of any of its rights under this Agreement; however, in the event of a sale of business to a third party, Cerner Etreby shall consent to such an assignment provided that Client shall transfer possession of the original as well as all backup copies of the Software, a copy of this Agreement, and all other Documentation. Client must be current in its payment obligations to Cerner Etreby prior to any assignment and such assignment will not increase the scope of the license. Cerner Etreby will issue a new license for the new owner and modify the Software to accommodate changes to the status file and will charge a reasonable transfer and programming fee. Following any assignment by Client pursuant to this provision, Client shall have no continued right to use or access the Software and Client shall immediately return or destroy all Confidential Information of Cerner Etreby which is in Client's possession shall be immediately returned or destroyed.

2.4 **Ownership.** Client recognizes and agrees that the Software and all Documentation, user's manuals, training aids and other written material or information are the property of and subject to the proprietary rights of Cerner Etreby; and, their use and disclosure must be continuously controlled, monitored and secured as hereinafter provided in order to protect said proprietary rights from misappropriation or misuse by unauthorized persons or entities.

2.5 **License Restrictions.** Client shall not: (a) copy, reprint, duplicate, modify, or permit anyone else to copy, reprint, duplicate or modify any physical or magnetic version of all or any part of the Software or Documentation; or (b) create or permit others to create, by reverse assembling or reverse compiling, the source program or any part thereof from the Software's object program or from any other information made available under this Agreement or otherwise. Client's obligations under this paragraph shall survive termination of this Agreement by either party and shall remain effective thereafter.

2.6 **Notice of Infringement.** Client agrees to promptly notify Cerner Etreby of any known or suspected infringement or misappropriation of Cerner Etreby's proprietary rights.

2.7 **Total Switch Contract (TSC).** Electronic claims transmitted through the Cerner Etreby switch shall be subject to the terms of the Total Switch Contract, set forth in Exhibit B.

### III.   FEES AND PAYMENTS.

3.1 **License and Support Fees.** Client shall pay the initial license fee for the Software as set forth on Attachment I of a Cerner System Schedule. Client shall pay monthly license and support fees for the initial workstation and each additional workstation as set forth on Attachment I. All such monthly license and support fees shall be invoiced in advance and include the following bundle of services:
- Software support
- Software version releases and enhancements
- DUR clinical screening data and biweekly updates
- Drug database maintenance and weekly updates
- Full page patient monographs (English and Spanish)
- Third-party plan setup, updates, and maintenance

3.2 **Additional Purchases.** Fees for any additional purchases from Cerner Etreby will be set forth on a Cerner System Schedule or Arrangement Letter. Such purchases will be subject to the terms and conditions of this Agreement.

3.3 **Payment Terms.** Client shall pay all invoices within thirty (30) days following their receipt by Client. Finance charges or interest shall accrue on balances more than ninety (90) days in arrears at a rate of one and a half percent (1.5%) per month, not to exceed the maximum legal rate. A waiver of finance charges or interest by Cerner Etreby shall not be deemed a waiver of future late finance charges or interest.

3.4 **Third Party Fees.** Cerner Etreby reserves the right to invoice Client separately for third party software fees required for updates.

### IV.   TERM AND TERMINATION.

4.1 **Term.** The term of this Agreement shall begin upon the Effective Date and remain effective for an initial term of one (1) year ("Initial Term"). Thereafter, the term will automatically renew for additional one (1) year periods ("Renewal Terms"), unless either party provides the other with written notification of its intent to terminate not less than sixty (60) days prior to expiration of the then-current term (the Initial Term and any Renewal Terms, collectively, shall be called the "Term"). Cerner Etreby may increase the fees after the Initial Term by giving Client sixty (60) days written notice.

4.2 **Termination.** Cerner Etreby may terminate this Agreement and the related Software license: (i) at its option, and upon five (5) days written notice, in the event of non-payment of any invoice, or (ii) immediately upon Client's breach of any of the other covenants and conditions herein contained. In such event, in addition to the other remedies available to



Cerner Etreby, Client agrees to pay the sums due for the remainder of the term specified, as well as Cerner Etreby's costs and expenses of collection including reasonable attorney's fees.

## V.    SUPPORT AND TRAINING.

5.1     **Software Support.** For so long as Client continues to pay monthly fees as set forth in Attachment I of a Cerner System Schedule, Cerner Etreby will provide Software support to Client during its office hours Monday through Friday, 8:00 AM to 6:00 PM Pacific Standard Time (PST), and Saturday 6:00 AM to 3:00 PM PST. Cerner Etreby also provides after-hours support services twenty four (24) hours a day seven (7) days a week by assigning qualified support service employees to be on-call after office hours.

5.2     **Training.** Cerner Etreby will make training available to Client, at Client's expense, in the installation, use, operation and support of the Software in accordance with Cerner Etreby's then-current training program.

5.3     **First Line Hardware Support Services** shall be defined as first-line hardware telephone support to be provided by Cerner Etreby's in-house technicians. This support includes assisting Client with troubleshooting and attempting to resolve basic problems related to Client's existing hardware network. This support includes services only for hardware used to operate Client's pharmacy business, and not for any other hardware. Client shall promptly notify Cerner Etreby when changes to its hardware setup occur. This service does not include sending a technician on site and/or replacing faulty equipment. Services which are not covered under this service include: data recovery from a failed system, adding additional workstations to an existing network, and non-Cerner Etreby software problems.

5.4     Client is responsible for using, maintaining, and updating anti-virus software on all workstations. Client assumes all responsibility for performing daily backups and maintaining the integrity of these backups.

5.5     First Line Hardware Support Services shall be provided to Client during the Principal Support Hours ("PSH"), consisting of the hours of 8:00 AM to 6:00 PM PST, Monday through Friday, and 9:00 AM to 3:00 PM PST on Saturdays, excluding Cerner Etreby holidays. Any services provided by Cerner Etreby outside the PSH may be provided to Client at Cerner Etreby's sole discretion, and at Cerner Etreby's then-current consulting rates.

5.6     Cerner Etreby has the right, at its sole discretion, to recommend and/or demand that Client replace and/or repair certain or all components of the computer system or network. Such computer components may be purchased from Cerner Etreby if Client so desires and they are available from Cerner Etreby. Cerner Etreby's recommendation to replace hardware components, at Client's expense, may be required when such components or systems are not properly functioning due to, or resulting from (i) wear and tear considered excessive by Cerner Etreby, (ii) tampering, modifications, or repairs not authorized by Cerner Etreby, (iii) fault or negligence of Client or causes within the reasonable control of Client, (iv) improper use or misuse of the equipment, (v) catastrophe or other cause external to the equipment, including but not limited to power, air conditioning and communication line failures, or (vi) manufacturing defects in the equipment.

## VI.    CLIENT RESPONSIBILITIES

6.1     **Compliance with Laws.** Client shall be solely responsible for complying with the laws and regulations applicable in the Territory, or any nation, or political subdivision thereof, in which Client engages in business in performing Client's responsibilities hereunder as well as those applicable to the licensing and sale of Software and services, including, without limitation, tax, export and foreign exchange laws, export controls imposed by the U.S. Export Administration Act of 1979, as amended, and the United States Foreign Corrupt Practices Act.

6.2     **Maintenance of Qualified Individuals.** Client hereby represents and warrants it possesses the experience, skills and resources required to perform its obligations under this Agreement. Client shall, at its expense, retain adequate numbers of qualified individuals who will (i) provide adequate support services; (ii) perform any upgrades and/or updates to the Software as may become necessary once such Software has come within Client's possession, custody or control; and (iii) act as liaison for all technical communications. Without limiting the foregoing, within sixty (60) days of the Effective Date of this Agreement, Client shall have an appropriate number and type of its employees complete Cerner Etreby's training for the use of the Software. Cerner Etreby will provide such training to Client, at such time and location and under such assumption of expense as mutually agreed upon by the parties. Client is solely responsible for all of its employees and agents, its labor costs and expenses arising in connection therewith and for any and all claims, liabilities or damages or debts of any type whatsoever that may arise on account of Client's activities, or those of its employees or agents in the performance of this Agreement.

6.3     **Problem Resolution.** Client shall keep Cerner Etreby informed on a regular basis of any problems encountered with the Software and the associated resolutions. Client shall communicate promptly to Cerner Etreby any and all suggestions for modifications, design changes or improvements to the Software. Client further agrees that Cerner Etreby shall own, and Client hereby grants to Cerner Etreby, any and all right, title and interest in and to such



Cerner
Etreby®
Del's Pharmacy
1-15AJVX3

suggested modifications, design changes or improvements of the Software without the payment of any additional consideration to Client, its employees, its agents, or to any other entity or person.

6.4     **Records and Reports: Audit Rights.** Client shall maintain accurate and complete records of its activities under this Agreement and provide information as reasonably requested by Cerner Etreby to ensure compliance by Client with the terms of this Agreement. Cerner Etreby or its representatives may, upon reasonable notice to Client and during normal working hours, inspect those business records of Client necessary to verify Client's compliance with this Agreement.

## VII.    DISCLAIMERS.

7.1     **Client Acknowledgment.** Client accepts and acknowledges that the performance of the Software depends upon the validity, accuracy, and thoroughness of the information being entered into the computer.

7.2     **Information Management Tool.** Client accepts and acknowledges that the drug interaction information built into the system as a part of the drug file is compiled from several textbooks on the subject and is included for guidance only and in no way should be considered as a comprehensive reference. The pharmacist using the program is required to use his professional judgment as to the validity or significance of a particular interaction message or lack thereof as it applies to a particular patient. Client accepts and understands that, when the interaction function is triggered by the user, the message that may appear is merely the product of a hypothetical equation of two drugs taken together based on previous studies or observations with respect to other patients. Thus, the unique conditions of the individual patient, differences in disease, doses of drugs, routes and duration of administration, renal and hepatic status, etc. must always be considered when evaluating the significance of a drug interaction message or lack thereof.

7.3     **Client Indemnity.** Final responsibility for dispensing prescription drugs rests with the pharmacist. Client agrees to indemnify, defend and hold Cerner Etreby, its officers, employees, agents, representatives and assignees, harmless from any and all claims for personal injuries or damages made by, or on behalf of a patient or user of a prescribed drug, including but not limited to claims brought by any agent, beneficiary, relative or representative of any such patient.

7.4     **Warranty Disclaimer.** CERNER ETREBY EXPRESSLY DISCLAIMS ALL WARRANTIES, BOTH EXPRESS AND IMPLIED, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF MERCHANTABILITY AND OF FITNESS FOR A PARTICULAR PURPOSE AND NONINFRINGEMENT WITH RESPECT TO ANY AND ALL PRODUCTS OR SERVICES (OR PORTIONS THEREOF) PROVIDED HEREUNDER.

## VIII.    INDEMNIFICATION AND LIMITATION OF REMEDIES.

8.1     **Intellectual Property Indemnification.** Cerner Etreby agrees to indemnify, defend and hold Client harmless from third party claims of infringement of any United States patent, copyright or trademark rights or other intellectual property rights of third parties which result from the use of the Cerner Etreby Software. The foregoing indemnification is Client's sole and exclusive remedy for any claims of infringement. Cerner Etreby's obligations under this Section are contingent upon (a) Client giving prompt written notice to Cerner Etreby of any such claim; (b) Client allowing Cerner Etreby to control the defense and any related settlement of any such claim; and (c) Client furnishing Cerner Etreby with reasonable assistance in the defense of any such claim.

8.2     **Limitations on Indemnification.** Cerner Etreby shall have no obligation under this Agreement for any claim of infringement or misappropriation to the extent that it results from (a) combination or use of the Software with equipment, products, or processes not furnished by Cerner Etreby; (b) modifications to the Software made other than by Cerner Etreby; (c) failure of Client to use updated or modified Software provided by Cerner Etreby to avoid a claim of infringement or misappropriation; (d) compliance by Cerner Etreby with designs, plans or specifications furnished by or on behalf of Client; or (e) any tampering with Software by non- Cerner Etreby personnel.

8.3     **Liability Cap.** Cerner Etreby's total liability arising out of, or in any way connected to this Agreement, shall be limited to money damages not to exceed the total amount paid by Client for the applicable Software license and related support services.

8.4     **Limitation on Damages.** CERNER ETREBY SHALL NOT BE LIABLE FOR ANY INCIDENTAL, SPECIAL, OR CONSEQUENTIAL DAMAGES OF ANY NATURE WHATSOEVER, SUCH AS, BUT NOT LIMITED TO, LOSS OF ANTICIPATED PROFITS OR OTHER ECONOMIC LOSS IN CONNECTION WITH, OR ARISING OUT OF THE EXISTENCE OF, THE FURNISHING, THE FUNCTIONING, OR CLIENT'S USE OF EITHER THE SOFTWARE OR THE SERVICE PROVIDED FOR IN THIS AGREEMENT OR FOR SPECIFIC PERFORMANCE. IN ADDITION, CERNER ETREBY SHALL NOT BE LIABLE FOR ANY DAMAGES CAUSED BY DELAY IN RENDERING SERVICES HEREUNDER ARISING FROM ANY CAUSE BEYOND THE REASONABLE CONTROL OF CERNER ETREBY, OR AS A RESULT OF STRIKES OR WORK STOPPAGES.



CERNER
Etreby
Del's Pharmacy
1-15AJVX3

## IX.    NOTICES.

Any and all notices required hereunder shall be delivered personally, by certified mail return receipt requested or by overnight mail and addressed as follows:

To Client:      Del's Pharmacy
                10700 Jersey Blvd. #330 , 340
                Rancho Cucamonga, CA 91730
                Fax: (909) 948-0075
                Attention:

To Cerner Etreby:   Cerner Healthcare Solutions, Inc.
                    7851 Garden Grove Blvd.
                    Garden Grove, CA  92841
                    Executive Title:
                    Cerner Etreby Council:
                    Fax: (714) 889-1223

## X.    CONFIDENTIALITY.

Except as expressly permitted by this Agreement, Cerner Etreby and Client will not, nor will they permit their respective employees, agents, attorneys or independent contractors to, disclose, use, copy, distribute, sell, license, publish, reproduce or otherwise make available Confidential Information of the other party. Cerner Etreby and Client will each (a) secure and protect the other party's Confidential Information by using the same or greater level of care that it uses to protect its own confidential and proprietary information of like kind, but in no event less than a reasonable degree of care, and (b) advise each of their respective employees, agents, attorneys and independent contractors who have access to such Confidential Information of the terms of this Section. Notwithstanding the foregoing, either party may disclose the other party's Confidential Information to the extent required by applicable law or regulation, including without limitation any applicable Freedom of Information Act or sunshine law, or by order of a court or other governmental entity, in which case such party will so notify the other party as soon as practicable and in any event at least thirty (30) days prior to such party making such required disclosure. Upon execution of this Agreement and subject to the terms and conditions of the Cerner.com Restricted Access Agreement set forth in Exhibit A, Cerner Etreby agrees to grant to Client licensed access to restricted portions of Cerner.com. Cerner.com contains certain copyrighted and proprietary and confidential information.

## XI.    BUSINESS ASSOCIATE CONTRACT.

The parties agree to be bound by the terms of the Business Associate Contract, attached as Exhibit C.

## XII.    GENERAL.

The foregoing terms and conditions shall prevail notwithstanding any variance in the terms and conditions of any orders submitted by the Client in respect to the matters listed herein and any such oral or written terms are void, invalid and of no effect. This Agreement is entire within its written terms and supersedes all previous written or oral understandings between the parties hereto. If any, with respect to the subject matter set forth herein. No modification of this Agreement or subsequent oral agreement is binding on the parties except in writing signed by authorized officers of both parties hereto. Any dispute concerning this Agreement shall be interpreted in accordance with the laws of the State of Missouri. If any of the terms, covenants or conditions contained herein are deemed void, voidable, illegal or unenforceable by any court of competent jurisdiction, such shall be deleted from this Agreement. Such determination, however, shall not affect the validity or enforceability of the remaining terms, covenants or conditions and the same shall remain in full force and effect so as to give maximum effect to the intent of the parties.



Del's Pharmacy
1-15AJVX3

8

## EXHIBIT A
## CERNER.COM RESTRICTED ACCESS AGREEMENT

1. Client agrees to protect and to keep in the strictest confidence all information and materials to which Client is granted access through Cerner.com "Client-only" access (the "Confidential Information"), except for information which is clearly sales, marketing, or other information available without restriction to the general public. Client shall use the Confidential Information only for the purpose of supporting or otherwise facilitating its permitted use of the Software identified in the Agreement, and for no other purpose whatsoever.

2. Client shall designate and identify to Cerner Etreby those employees, agents, or other such representatives of Client, which Client desires to have access to the Confidential Information. Client agrees to limit access to Confidential Information to such individuals as have a need to know or have need to access the information in order to increase their understanding or efficient use of Cerner Etreby products and services identified in the Agreement. All such persons shall be under a confidentiality agreement with Client that is sufficient to protect the proprietary and confidentiality interests of Cerner Etreby, its vendors and its clients. No copies of the Confidential Information shall be made, except as necessary to facilitate Client's use of the Confidential information as described above.

3. Client agrees to have in place, or implement if needed, appropriate policies, procedures, education, controls and internal audits necessary to assure Client's compliance with this agreement. Client understands that all persons who are granted access to the Confidential Information will be advised by Cerner Etreby of their obligation of confidentiality with respect to the Confidential Information. Nonetheless, Client agrees that it shall be responsible for any breach of this Confidentiality Agreement by any person who is given access to the Confidential Information to facilitate Client's use of the Software. Client further understands and agrees that its responsibility shall not be reduced or affected in any way by the advisement given to each person accessing such Confidential Information. Cerner Etreby reserves the right to terminate Client's and/or any of its personnel's access to Cerner.com at any time for any reason.

4. Client agrees to notify Cerner Etreby and Client's primary Information services executive immediately upon learning of any loss of control, improper disclosure, or other misuse of any Confidential Information or other materials made available through Cerner.com, or of any password, logon procedure, or other method limiting access to Cerner.com. Further, Client agrees to take whatever steps are reasonably required to halt and otherwise remedy, if possible, any such breach of security, and to take all appropriate steps to regain control of the Confidential Information or such other information improperly disclosed or misused, and to prevent, as necessary, further disclosures or misuses.

5. Client shall not be liable to Cerner Etreby for disclosure of Confidential Information if: (a) the Confidential Information is or becomes public without the fault of Client, or (b) the Confidential Information was in Client's possession or was known by Client prior to Client's receipt of the Confidential Information from Cerner Etreby, or (c) the Confidential Information is or becomes available to Client from a source already in legitimate possession of said Confidential Information, said source being other than Cerner Etreby, or (d) the Confidential Information is developed independently by Client, or (e) the Confidential Information is disclosed for unrestricted release with the written approval of Cerner Etreby to whom it relates, or (f) Client is obligated to disclose the Confidential Information by order or regulation of any court or other governmental entity.

6. All personal passwords, logon procedures, or other methods having the effect to limit access that Cerner Etreby discloses to Client are designed to be of limited scope and are highly confidential in nature. Client agrees to exercise all necessary control over such information so as to avoid the possibility of its disclosure or other misuse. Further, Client agrees that no such information shall be shared with any other individual or organization unless Client is otherwise authorized to do so, in writing, by Cerner Etreby.

7. Information accessed through Cerner.com shall not be further transmitted, reproduced, or otherwise copied, in whole or in part, through or under any medium, for the benefit or use of any person, not otherwise permitted to receive or use such information, without first obtaining Cerner Etreby's written consent.

8. Client may, however, disclose the information to any person within Client's organization if necessary to facilitate Client's use of Software (or other Cerner Etreby products and services provided under agreement) to which the information relates so long as the party disclosing the information notifies the receiving party of the confidentiality of the information and of their obligation to comply with these confidentiality terms.

9. Due to the nature of Cerner Etreby's business and the value of Cerner Etreby's proprietary information, Client agrees that a breach of any of the provisions hereof may inflict serious harm on Cerner Etreby, and that termination of Client's license, if reasonable under the circumstances, and money damages may be inadequate relief. Accordingly, Cerner Etreby shall be entitled to injunctive relief to prevent or prohibit any threatened or continuing breach of any of the terms and provisions hereof and, in addition thereto, shall be entitled to any and all other remedies available at law or in equity.



Del's Pharmacy
1-13AJVX3

Case 5:14-cv-01249-SVW-DTB   Document 1   Filed 06/19/14   Page 39 of 50   Page ID #:39

## EXHIBIT B
## TOTAL SWITCH CONTRACT

Third-party claims travel through a network of computers and telephone lines for adjudication by Pharmacy Benefits Managers ("PBMs"). The cost encumbered with submitting the claims are deducted from Client's payment by the third-party payers. Currently, the majority of PBMs do not want to be involved with the accounting functions and require pharmacies to be associated with a total switch contractor.

For its clients' convenience, Cerner Etreby is providing this Total Switch Contract ("TSC") in order to secure access to all third-party plans. The service enables Client to submit claims and Client is paid in full by the PBM. At the end of every month, Cerner Etreby aggregates and bills Client for all the claims submitted electronically in one convenient invoice regardless of the number of payers involved.

For clients who are using Cerner Etreby's ePrescribing service, physician prescriptions submitted electronically will be captured and invoiced to Client on a monthly basis and will be billed at the current rate set forth on Attachment I of a Cerner System Schedule.  Client understands that it will be billed for electronic claims transmitted through the Cerner Etreby switch at the prevailing rate set forth on Attachment I. ePrescriptions will be billed at the current rate set forth on Attachment I. All rates are subject to change based on economic conditions.

Client provides the following information as it relates to this Total Switch Contract:

**Pharmacy Name:**     Del's Pharmacy

**Contact:**
**NABP #:**  to follow
**Submitter #:**  to follow

**Provider #:**  to follow
**Phone #:**  to follow



CERNER
Etreby
Del's Pharmacy
1-1SAJVX3

## EXHIBIT C
## BUSINESS ASSOCIATE CONTRACT

THIS BUSINESS ASSOCIATE CONTRACT ("Contract") is entered into on the Effective Date of the Agreement, between Client (herein referred to as the "Covered Entity") and Cerner Etreby.

WHEREAS, Covered Entity may make available to Cerner Etreby certain information, in conjunction with services that are being provided by Cerner Etreby to Covered Entity, that is confidential and must be afforded special treatment and protection.

WHEREAS, Cerner Etreby will have access to and/or receive from Covered Entity certain information that can be used or disclosed only in accordance with this Contract.

NOW, THEREFORE, Covered Entity and Cerner Etreby agree as follows:

1.  **Definitions.**

    HHS Privacy Regulations shall mean the privacy regulations promulgated under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and published in the Code of Federal Regulations ("C.F.R.") at Title 45, Sections 160 and 164.

    HHS Security Regulations shall mean the security regulations promulgated under HIPAA and published in the C.F.R. at Title 45, Sections 160, 162 and 164.

    Information shall mean any "protected health information" provided and/or made available by Covered Entity to Cerner after the Effective Date, and has the same meaning as the term "protected health information" as defined by 45 C.F.R. 164.501.

2.  **Term.** This Contract shall commence as of compliance date for the HHS Privacy Regulations (the "Effective Date"), and shall expire when all of the Information (as defined in the next sentence) provided by Covered Entity to Cerner Etreby is destroyed or returned to Covered Entity pursuant to Clause 14 below.

3.  **Limits On Use And Disclosure Established By Terms Of Contract.** Cerner Etreby hereby agrees that it may not use or disclose the Information provided or made available by Covered Entity for any purpose other than as expressly permitted or required by this Contract, the software agreement with Cerner Etreby, or by the HHS Privacy Regulations. (ref. 45 C.F.R. 164.504(d)(2)(i)).

4.  **Stated Purposes For Which Cerner Etreby May Use or Disclose Information.** The parties hereby agree that Cerner Etreby shall be permitted to use and/or disclose Information provided or made available from Covered Entity relating to and as necessary to maintain and support Covered Entity's health information systems, to provide other services on behalf of the Covered Entity as may be entered into under contract and to aggregate data as set forth below.

5.  **Use of Information for Management, Administration and Legal Responsibilities.** Cerner Etreby is permitted to use Information as necessary for the proper management and administration of Cerner Etreby or to carry out legal responsibilities of Cerner Etreby. (ref. 45 C.F.R. 164.504(e)(4)(i)(A-B)).

6.  **Disclosure of Information For Management, Administration and Legal Responsibilities.** Cerner Etreby is permitted to disclose Information received from Covered Entity for the proper management and administration of Cerner Etreby or to carry out legal responsibilities of Cerner Etreby, provided: (i) the disclosure is required by law; or (ii) Cerner Etreby obtains reasonable assurances from the person to whom the Information is disclosed that it will be held confidentially and used or further disclosed only as required by law or for the purposes for which it was disclosed to the person, the person will use appropriate safeguards to prevent use or disclosure of the Information, and the person immediately notifies Cerner Etreby of any instance of which it is aware in which the confidentiality of the Information has been breached. (ref. 45 C.F.R. 164.504(e)(4)(ii)).

7.  **Data Aggregation Services.** Cerner Etreby is also permitted to use or disclose Information to provide data aggregation services, as that term is defined by 45 C.F.R. 164.501, relating to the health care operations of Covered Entity. The parties agree that any Information provided to Cerner Etreby hereunder which is later de-identified and therefore no longer identifies a patient (i.e. is no longer "protected health information" as defined by 45 C.F.R. 164.501) will no longer be subject to the provisions set forth in this Contract. (ref. 45 C.F.R. 164.504(e)(2)(i)(B)).

8.  **Limits On Use And Further Disclosure Established By Contract And Law.** Cerner Etreby hereby agrees that the Information provided or made available by Covered Entity shall not be further used or disclosed other than as permitted or required by this Contract or as required by law. (ref. 45 C.F.R. 164.504(e)(2)(i)(A)).



Etreby
Del's Pharmacy
1-16AJVX3

9.   **Appropriate Safeguards.** Cerner Etreby will establish and maintain appropriate safeguards to prevent any use or disclosure of the Information, other than as provided for by this Contract. (ref. 45 C.F.R. 164.504(e)(2)(ii)(B)). Cerner Etreby will implement administrative, physical and technical safeguards that reasonably and appropriately protect the confidentiality, integrity and availability of the electronic Information that it creates, receives, maintains or transmits on behalf of Covered Entity by the compliance date for the HHS Security Regulations. (ref. 45 C.F.R. 164.314(a)(2)(i)(A)).

10.   **Reports Of Improper Use Or Disclosure.** Cerner Etreby hereby agrees that it shall report to Covered Entity any use or disclosure of Information not provided for or allowed by this Contract and, after the compliance date for the HHS Security Regulations, any Security Incident (as that term is defined in the HHS Security Regulations) of which Cerner Etreby becomes aware. (ref. 45 C.F.R. 164.504(e)(2)(ii)(C); 45 C.F.R. 164.314(a)(2)(i)(C)).

11.   **Subcontractors and Agents.** Cerner Etreby agrees that if Cerner Etreby provides Information to any subcontractors or agents, Cerner Etreby will ensure that such agent or subcontractor agrees to the same restrictions on the use and disclosure of such Information that apply to Cerner Etreby. (ref. 45 C.F.R. 164.504(e)(2)(ii)(D)).

12.   **Designated Record Set.** To the extent Cerner Etreby maintains Information in a designated record set, as that term is defined by 45 C.F.R. 164.501, Cerner Etreby will:

   a)   to the extent applicable, make available Information in accordance with 45 C.F.R. § 164.524. (ref. 45 C.F.R. 164.504(e)(2)(ii)(E)).

   b)   to the extent applicable, make available Information for amendment and incorporate any amendments to Information in accordance with 45 C.F.R. 164.526. (ref. 45 C.F.R. 164.504(e)(2)(ii)(F)).

13.   **Provide Accounting.** Cerner Etreby agrees to make Information available as required to provide an accounting of disclosure of Information received from, or created or received by Cerner Etreby on behalf of Covered Entity in accordance with 45 C.F.R. 164.528. (ref. 45 C.F.R. 164.504(e)(2)(ii)(G)).

14.   **Access to Books and Records.** Cerner Etreby hereby agrees to make its internal practices, books, and records relating to the use or disclosure of Information received from, or created or received by Cerner Etreby on behalf of the Covered Entity, available to the Secretary of the Department of Health and Human Services or the Secretary's designee for purposes of determining compliance with the HHS Privacy Regulations. (ref. 45 C.F.R. 164.504(e)(2)(ii)(H)).

15.   **Return or Destruction of Information.** At termination of this Contract, Cerner Etreby hereby agrees to return or destroy all Information received from, or created or received by Cerner Etreby on behalf of Covered Entity. Cerner Etreby agrees not to retain any copies of the Information after termination of this Contract. If return or destruction of the Information is not feasible, Cerner Etreby agrees to extend the protections of this Contract for as long as necessary to protect the Information and to limit any further use or disclosure. If Cerner Etreby elects to destroy the Information, it shall certify to Covered Entity that the Information has been destroyed. (ref. 45 C.F.R. 164.504(e)(2)(i)(I)).

16.   **Termination of Contract.** If Cerner Etreby materially breaches this Contract, Covered Entity may terminate this Contract and the software agreement under which Cerner Etreby received or had access to the Information that is the subject of the breach after sending written notice to Cerner Etreby describing Cerner Etreby's failure in detail and affording Cerner Etreby a sixty (60) day period in which to cure such failure. (ref. 45 C.F.R. 164.504(e)(2)(iii)).

17.   **Disputes.** Any controversy or claim arising out of or relating to the Contract will be finally settled by compulsory arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA").

18.   **Binding Nature and Assignment.** This Contract shall be binding on the Parties hereto and their successors and assigns, but neither Party may assign this Agreement without the prior written consent of the other, which consent shall not be unreasonably withheld.

19.   **Notices.** Whenever under this Contract one party is required to give notice to the other, such notice shall be deemed given if given in accordance with the terms of the underlying Agreement.

20.   **No Third Party Beneficiaries.** This Contract shall be binding upon and inure solely to the benefit of the parties hereto and their permitted assigns and successors and nothing herein, express or implied, is intended to confer upon any other person or entity, any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Contract.

21.   **Entire Agreement.** This Contract consists of this document, and constitutes the entire agreement between the parties with respect to the subject matter of this Contract. No change, waiver or discharge of obligations arising under this Contract shall be valid unless in writing and executed by the Party against whom such change, waiver or discharge is sought to be enforced.



Del's Pharmacy
1-15AJVXJ



# CERNER SYSTEM SCHEDULE NO. 1

This Cerner System Schedule No. 1 is made on December 19, 2008 ("Effective Date") between

Del's Pharmacy ("Client")                    and          Cerner Healthcare Solutions , Inc. ("Cerner Etreby")

a California corporation with its principal place of               a Delaware corporation with its principal place of
business at:                                                       business at:

10700 Jersey Blvd. #330 , 340                                     2800 Rockcreek Parkway
Rancho Cucamonga, CA 91730                                       Kansas City, MO 64117, U.S.A.
Telephone: (909) 948-0206                                        Telephone: (816) 221-1024

As of the Effective Date, this Cerner System Schedule consists of the attachments described below. Client hereby agrees to
accept the products and services set forth in the attachments, and Cerner Etreby agrees to furnish such products and
services, upon the terms and conditions of the CERNER SOFTWARE LICENSE AND SUPPORT AGREEMENT, dated
December 19, 2008 between Client and Cerner Etreby (the "Agreement").

This Cerner System Schedule No. 1 includes the following attachment(s):

Attachment I      -    Scope of Use Specifications, Payment Terms and Summary of Purchase Price
Attachment II     -    Equipment (Not Applicable)
Attachment III    -    Licensed Software
Attachment III    -    Learning Software (Not Applicable)
Attachment IV     -    Sublicensed Software (Not Applicable)
Attachment IV     -    Subscriptions (Not Applicable)
Attachment V      -    Managed Services (Not Applicable)
Attachment V      -    Application Service Provider (Not Applicable)
Attachment VI     -    Advanced Technology Solutions (Not Applicable)
Attachment VII    -    Packaged Solutions (Not Applicable)
Attachment VIII   -    Transaction Services
Attachment IX     -    Professional Services (Not Applicable)

DEL'S PHARMACY                                                   CERNER HEALTHCARE SOLUTIONS, INC.

By: _____                                   By: _____

_____
(Typed or printed)                                                          John Landis

Title: _____RPB_____                                       Title: _____ Senior Vice President

SIGNATURE PAGE


Del's Pharmacy
1-15AJVX3

Rev. 08.27.08

13

### CERNER SYSTEM SCHEDULE
### NO. 1
### ATTACHMENT I
### SCOPE OF USE SPECIFICTIONS, PAYMENT TERMS AND SUMMARY OF PURCHASE PRICE

**SCOPE OF USE SPECIFICATIONS**

1.  Designated Facility where the Software shall reside:

    Def's Pharmacy
    10700 Jersey Blvd. #330 , 340
    Rancho Cucamonga, CA 91730

2.  For use and access by the following Permitted Facilities:

    Def's Pharmacy
    10700 Jersey Blvd. #330 , 340
    Rancho Cucamonga, CA 91730

3.  Scope of use limits:

|  |  |  |  |
|---|---|---|---|
| Etreby Pharmacy Solutions | Facilities | 1 | Total number of sites to use a specific application. |
| Advantage Database Central Server User License | Users | 5 | Total number of individuals authorized by the client to use the application under the terms of the license agreement, regardless of whether the user is actively using the licensed application at any given time. The user is registered in the system and has a unique sign-on. |
|  | Work station | 5 | Total number of work stations authorized by the Client to use the application under the terms of the license agreement. |
| Etreby Nursing Home Solution | Facilities | 1 | Total number of sites to use a specific application. |

4.  The Software shall be used by Client solely (i) for the purposes of processing data resulting from or related to clinical procedures performed at Permitted Facilities and (ii) in accordance with the Solution Descriptions for the solutions.

5.  In the event any scope of use limit is exceeded, Client may purchase licenses to extend the use of the Software and the monthly Support at then-current rates.

6.  Client's scope of use will be measured periodically by Cerner Etreby's system tools, or for metrics that cannot be measured within the System or obtained through the American Hospital Association (e.g. FTEs or locations), Client will provide the relevant information to Cerner Etreby at least once per year. In cases where Client-provided information is being used to measure scope of use, Cerner Etreby reserves the right to inspect the applicable Client records if such information is not publicly available. Client agrees that if an event occurs that will affect Client's scope of use (such as acquisition of a new hospital or other new facility), Client will promptly notify Cerner Etreby in writing of such event (no later than thirty (30) days following the effective date of such event) so that Client's scope of use can be reviewed. Any additional license fees due under this Paragraph 6 shall be payable within thirty (30) days following Client's receipt of an invoice for such fees, and additional quarterly Support fee payments shall begin as of the date the scope of use was exceeded (and will be pro-rated for any partial quarter).

7.  If Client operates more than one data center environment, Cerner Etreby reserves the right to charge additional Support fees if Client's call volume and other Support services requests are increased as a result of the use of multiple data centers.



Def's Pharmacy
1-15AJVX3

2008-12-18,23;20
12/19/2008 10:52          9094659282                     SAM NOHA                      >>

## CERNER SYSTEM SCHEDULE
### NO. 1
### ATTACHMENT I
#### SCOPE OF USE SPECIFICTIONS, PAYMENT TERMS AND SUMMARY OF PURCHASE PRICE

### PAYMENT TERMS

#### SOFTWARE LICENSE FEES:

a) <u>Initial Payment</u>: Fifty percent (50%) of the total fees for the Software shall be payable upon the Effective Date of this Cerner System Schedule.

b) <u>Second Payment</u>: Fifty percent (50%) of the total fees for the Software shall be payable ninety (90) days following the Effective Date of this Cerner System Schedule.

#### SUPPORT FEES:

The total amount of the monthly Support fees shall be payable quarterly beginning upon the earlier of First Productive Use or sixty (60) days following the Effective Date of this Cerner System Schedule.

#### TRANSACTION SERVICES FEES:

Client shall pay per transaction fees based on the actual transactions at the rate set forth on Attachment VIII of this Cerner System Schedule. Such fees shall be invoiced on a monthly basis in arrears, and shall be payable upon client's receipt of an invoice for such fees.



Del's Pharmacy
1-15AJVX3

### CERNER SYSTEM SCHEDULE
### NO. 1
### ATTACHMENT I
### SUMMARY OF PURCHASE PRICE

| | | | | | | |
|---|---|---|---|---|---|---|
| X | Equipment | - | - | - | - | - |
| II | Licensed Software | 5,321 | - | - | - | 345 | - |
| III | Learning Software | - | - | - | - | - |
| IV | Sublicensed Software | - | - | - | - | - |
| IV | Subscriptions | - | - | - | - | - |
| V | Managed Services | - | - | - | - | - |
| V | Application Service Provider | - | - | - | - | - |
| VI | Advanced Technology Solutions | - | - | - | - | - |
| VII | Packaged Solutions | - | - | - | - | - |
| VIII | Transaction Services | - | - | - | - | - |
| IX | Professional Services | - | - | - | - | - |

All Prices are in US Dollar (USD) and are effective until January 19, 2009.

System Purchase Price + Required Maintenance Fees         5,321  (USD)

System Purchase Price Grand Total         5,321  (USD)

First Year Support Fees         4,140 (USD)

CERNER

Defs Pharmacy
Cerner Proprietary Use Only

T-15AJVX3

16

CERNER SYSTEM SCHEDULE
NO. 1
ATTACHMENT III
LICENSED SOFTWARE
CERNER ETREBY

| Quote Number | Solution Code | Description | Scope | Purchase Price |
|---|---|---|---|---|
| 1-243082722-R-1 | ET-20100 | Etreby Pharmacy Solutions | Facilities | 3,500 |
| | ET-22100 | Etreby Nursing Home Solution | Facilities | 1,275 |
| | ET-22165 | Advantage Database Central Server User License | Users | 550 |

| | | |
|---|---|---|
| Total CERNER ETREBY Licensed Software List Price | 6,145 (USD) |
| Less Allowance | 824 (USD) |
| Total CERNER ETREBY Licensed Software Purchase Price | 5,321 (USD) |
| CERNER ETREBY Monthly Support Fees | 348 (USD) |

⊘ CERNER

Del's Pharmacy
Cerner Proprietary Use Only

1-15A/VXQ

17



2008-12-23 18:52   9894659282              SAM NOHA           P 19/19
                                                              PAGE 18/19

## CERNER SYSTEM SCHEDULE
### NO. 1
### ATTACHMENT VIII
### TRANSACTION SERVICES

Software-Ebwin, ADS S (1-2498637223-R-1)

| Solution Code | Description | Overage Fees |
|---|---|---|
| ET-20100-BILL | Pharmacy Claims Bill Trans | .08 |
| ET-20100-TRANS | Pharmacy Claims Transactions | .00 |

Total Transaction Services Excluding Overage Fees for Term          0 (USD)



Del's Pharmacy
Cerner Proprietary Use Only

1-15AJVX3

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO



San Bernardino District - Civil
247 West Third Street

San Bernardino, CA. 924150210
------------------------------------------------------------------------
------------------------------------------------------------------------
                                    CASE NO: CIVDS1406493

                    NOTICE OF TRIAL SETTING CONFERENCE
                     and NOTICE OF CASE ASSIGNMENT

IN RE: MARI-MINA V CERNER

THIS CASE HAS BEEN ASSIGNED TO: DAVID  COHN IN DEPARTMENT S37J
FOR ALL PURPOSES.

Notice is hereby given that the above-entitled case has been set for
Trial Setting Conference at the court located at  247 WEST THIRD STREET
SAN BERNARDINO, CA  92415-0210.

        HEARING DATE: 11/05/14 at  8:30 in Dept. S37J


DATE: 05/13/14  Christina M. Volkers, Clerk of the Court
                                    By: NICOLE HYDUKOVICH
------------------------------------------------------------------------
------------------------------------------------------------------------
                    CERTIFICATE OF SERVICE

I am a Deputy Clerk of the Superior Court for the County of San
Bernardino at the above listed address. I am not a party to this
action and on the date and place shown below, I served a copy of the
above listed notice:
( ) Enclosed in a sealed envelope mailed to the interested party
addressed above, for collection and mailing this date, following
standard Court practices.
( ) Enclosed in a sealed envelope, first class postage prepaid in the
U.S. mail at the location shown above, mailed to the interested party
and addressed as shown above, or as shown on the attached listing.
( ) A copy of this notice was given to the filing party at the counter
( ) A copy of this notice was placed in the bin located at this office
and identified as the location for the above law firm's collection of
file stamped documents.

Date of Mailing: 05/13/14
I declare under penalty of perjury that the foregoing is true and
correct. Executed on 05/13/14 at San Bernardino, CA

                            BY: NICOLE HYDUKOVICH


civ-ntsc-20130417

                                                        48

Notice 'NTSC' has been printed for the following Attorney/Firms
or Parties for Case Number CIVDS1406493 on  5/13/14:

PRATA & DALEY
515 SOUTH FIGUEROA STREET
STE 1515
LOS ANGELES, CA 90017



## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 10100 Santa Monica Boulevard, Twenty-Third Floor, Los Angeles, California 90067-4008.

On June 19, 2014, I served true copies of the following document(s) described as **DEFENDANTS CERNER CORPORATION & CERNER HEALTHCARE SOLUTIONS, INC.'S NOTICE OF REMOVAL** on the interested parties in this action as follows:

> Todd A. Daley, Esq.
> Cassandra J. Zappaterreno, Esq.
> Donald J. Bordelove, Esq.
> 515 South Figueroa Street
> Suite 1515
> Los Angeles, CA 90071
> Telephone: (213) 622-5600

☒ **BY FEDEX:** I enclosed said document(s) in an envelope or package provided by FedEx and addressed to the persons at the addresses listed above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of FedEx or delivered such document(s) to a courier or driver authorized by FedEx to receive documents

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on June 19, 2014, at Los Angeles, California.

Carla K. Rossi

LA01\RossC\510913.1.doc